| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| Allianz Global Corporate & Specialty, | § § | |
| Plaintiff, | § § | |
| versus | § § | Civil Action H-12-2246 |
| Texas Terminals LP, et al., | § § | |
| Defendants. | § § | |

## Opinion on Partial Summary Judgment

1. *Introduction.*

A stevedore says that its responsibility is limited by the bill of lading because it was working for the ocean carrier when cargo was damaged. The consignee, through its insurer, says that the stevedore was working for the consignee – beyond the limitation. The insurer will prevail.

2. *Background.*

In 2011, Rosemont Copper Company bought equipment from ABB Switzerland Ltd. It shipped the equipment – including a control room – from Rotterdam to Houston on the MV *Dolfijngracht*. During the voyage, the ocean carrier – Spliethoff's Bevrachtingskantoor BV – nominated Texas Terminals to be the stevedore. On the morning of December 19, 2011, a worker from Terminals began unloading the cargo using the ship's crane. Without using the control room's center-of-gravity markings, he moved it from the ship to a temporary trailer. Another worker from Terminals connected the trailer to a truck and towed it from the dock to a staging yard. As he was disconnecting the hitch, the trailer rocked, and the control room fell.

3. *Agent.*

Texas Terminals says that because it was Spliethoff's agent when it unloaded the room, placed it on the trailer, and drove it to the staging area, the bill of lading protects it. Allianz says that while the bill of lading covered the time when cargo is unloaded but still in the custody of Spliethoff, the control room was not in Spliethoff's custody when it fell. The bill's terms of carriage were "liner in

under hook and liner out under hook." When Terminals put the room on the trailer, it was no longer under the ship's hook, Spliethoff's obligations as a carrier had ended, and the bill of lading no longer applied. At that point, the room had been delivered, and Terminals was acting for Rosemont.

Terminals says that "liner out under hook" is simply a payment term that does not show for whom it worked. It says that its invoices show that it billed Spliethoff for its work with the control room, but it did not bill Rosemont or its agents for that work. It says that it received instructions from Spliethoff only and that when its workers did not use the gravity markings, it was working for Spliethoff.

Liner out and under hook is a shipping term; it determines the reciprocal responsibilities of the parties. A different term would mean a different price, just as a different destination or weight would. Once the goods are released on the dock from the ship, they are no longer under hook, the carrier's duty to deliver them had been done, and it no longer is responsible for them. Spliethoff nominated Terminals as stevedore, but Rosemont did not name its own agent. Just because it did not name an agent does not mean it did not have one. Once the room was placed on the trailer, it had been delivered, and it was no longer in Spliethoff's custody. From that point on, Terminals was acting as Rosemont's de-facto agent; as with a bailment, Spliethoff delivered it to Terminals in trust for Rosemont. Terminals billed Rosemont – through its agent, Agility Project Logistics, Inc. – for work done "from under hook to place of rest." When the control room fell off the trailer, Terminals was acting for Rosemont.

4. *Conclusion.*

When Texas Terminals unloaded the control room from the ship, it delivered the cargo. From that point on, Texas Terminals worked for the benefit of Rosemont Copper Company, and the bill of lading – including the Himalaya Clause – no longer applied. When the control room fell off its trailer, Texas Terminals was not covered by the Carriage of Goods by Sea Act. Its motion for partial summary judgment will be denied.

Signed on March 13, 2013, at Houston, Texas.

Lynn N. Hughes
United States District Judge